ANDREW HARRISON AND EDMUND TERRY as ADMINISTRATORS DE BONIS NON OF EDWARD HARRISON, DECEASED, APPELLANTS, *v.* JOHN CLARKE AND THOMAS BENNETT, RESPONDENTS.

*Action against the surety to an administrator's bond — what irregularities in the form of the surrogate's decree against an absconding administrator, not personally served, are not available as a defence to the sureties.*

APPEAL from a judgment in favor of the defendants dismissing the plaintiffs' complaint.

In August, 1870, one Ralph Dawson was appointed by the surrogate of the county of New York administrator, with the will annexed of Edward Harrison, deceased, and letters were issued to him. The defendants became his sureties.

In February, 1878, Andrew Harrison, one of the legatees, filed his petition with the surrogate, asking for a revocation of such letters, and that the administrator be required to account. Thereupon the surrogate issued a citation requiring Dawson to show cause on the 4th of March, 1878, why he should not be superseded as such administrator.

The citation was served, by leaving a copy at the place of residence of Dawson, in Kings county, the person who served it having been then and there advised that he was in the west, but where was not disclosed. On the return day there was no appearance by or for the administrator, and upon the proof of such ser-

vice and that only, except what was stated in the petition, an order was made superseding Dawson as administrator and revoking his letters.

In May following, the surrogate issued letters of administration with the will annexed, upon the estate of the deceased to the plaintiffs. The plaintiffs then, as such administrators, filed a petition asking for a citation requiring Dawson to appear and account for his proceedings as administrator, and on the 9th of July, 1878, an order was made referring it to R. F. Farrell, Esq., to take and state an account. The citation was served by leaving it at the house of Dawson. The result of that proceeding was a decree entered on the 16th of July, 1878, confirming the report of the referee, and adjudging that Dawson had in his hands, belonging to the estate, $4,133.57, and directing that he pay the same to the plaintiffs.

In the petition for the removal of Dawson, it was alleged that he had not invested the legacy given to the petitioner as required by law, but used the same in his business, paying interest thereon to the petitioners, at the rate of six per cent per annum, until about October, 1877, at which time he failed in business and became wholly insolvent, without, as the petitioner was informed, in any way securing the sum in his hands in trust; and also that since his failure he had left the State, although his family remained at No. 500 Willoughby avenue, in Brooklyn, his residence up to the time of his leaving the State.

The petition further alleges that the petitioner, although he had made diligent inquiry, could not ascertain the whereabouts of Dawson, but was informed that he was in one of the western States. It also alleges that the petitioner believed the trust fund to be in danger of total loss unless promptly secured. The order revoking the letters of administration stated, as a cause for the revocation, that it appeared by the petition and the affidavit of H. A. Heath, that the administrator had absconded from the State. After the issues had been joined in this case, and on the 9th of December, 1878, on the application therefor, the order of revocation was amended *nunc pro tunc*, by adding that the administrator had become incompetent by law to act as such, by reason of improvidence.

These facts having received due consideration, it was held at the Special Term that the original order of revocation was defective, because it stated the removal to be the result of the administrators' absconding from the State, and the complaint was dismissed.

The court, at General Term, said : " It seems to have been conceded on the trial that the order was in this respect defective, and it would seem to have been so regarded by the surrogate himself, because of the amendment which was accomplished by the order *nunc pro tunc.*

" The defendants are sureties and entitled to protection unless it appears that the proceedings against Dawson were in all respects authorized by statute, which alone confers power upon the surrogate over the administrators appointed by him. They are not parties to the proceedings affecting him, and therefore had no right to appeal from the decision of the surrogate, which could only have been taken by Dawson or some one on his behalf.

" The learned judge presiding at the court below placed his decision upon the insufficiency of the order of revocation, and not upon the insufficiency of the petition or proofs of which it was predicated, although the record of the proceedings itself was in evidence. He seemed to have thought that, inasmuch as the surrogate had no power by statute to remove an administrator because he had absconded from the State, the order of revocation was a nullity.

" This view is deemed to have been erroneous because the defect was a mere matter of form, the substance of the order in fact being the petition and the affidavit of Mr. Heath, which papers united established a case of improvidence on the part of the administrator, and the truth of the allegation that he was guilty of it, namely, the receipt of the legacy, the non-investment of it as required by law, the use of it in his business, his failure, and his departure from the State, and the impossibility, although due diligence was used, to ascertain where he resided. The surrogate had undoubtedly, on these facts under the statutes (Laws of 1837, chap. 460, § 34), the right to remove, for the petition, and proof given, conferred upon him jurisdiction. The service at his residence under the circumstances was clearly sufficient ; he

had fled and it could not be ascertained whither he had gone. It is not understood why the surrogate could not at any time have conformed the order to the proof before him.

" Whether the defendants should be relieved under such circumstances would seem to be only a question of costs ; but inasmuch as the whole matter was under the jurisdiction and within the discretion of the surrogate, and inasmuch as the order that he made was one eminently proper, the defendants cannot take advantage of that and relieve themselves from liability in consequence of it. His jurisdiction was absolute, the proceedings were regular, and it was his duty to make them effective."

*E. Terry*, for the appellants. *Geo. E. Horne*, for the respondent Clarke. *Townsend & Mahan*, for the respondent Bennett.

Opinion by BRADY, J.; DAVIS, P. J., and INGALLS, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.